FRANCIS D. TATTAN, JR. *vs.* ALLAN J. KURLAN & others.[1]

No. 90-P-585.

Worcester. September 17, 1991. - March 20, 1992.

Present: PERRETTA, PORADA, & LAURENCE, JJ.

*Real Property*, Boundary, Deed, Easement. *Deed*, Construction, Plan. *Easement. Way*, Private; Public: establishment.

Where the deed conveying a parcel of land contained no express exceptions or reservations evidencing an intent on the part of the grantor to retain the fee in a proposed roadway abutting the parcel, as is required in order to overcome the rule of construction established by G. L. c. 183, § 58, that the fee interest in ways is passed to the abutting grantees, the omission could not be supplied by incorporating by reference in the deed a recorded plan on which the original subdivider had indicated the location of the proposed roadway. [242-247]

CIVIL ACTION commenced in the Superior Court Department on August 30, 1989.

The case was heard by *William C. O'Neil, Jr.,* J., on motions for summary judgment.

*Scott S. Sinrich* for the defendants.

*John W. Spillane* for the plaintiff.

*Henry H. Thayer*, for Massachusetts Conveyancers Association & another, amici curiae, submitted a brief.

LAURENCE, J. The plaintiff, Francis D. Tattan, Jr., filed an action in the Superior Court in Worcester County in 1989 for a declaration that he, and not the defendants, owns two strips of land, each fifty feet wide, in two separate but adjacent subdivisions. The original developers had drawn and designated one of the strips as a "future roadway" and the other as a "prospective street" on plans recorded in the

---

[1]Marilyn S. Kurlan and Lilyan J. Sherman. The Massachusetts Conveyancers Association and The Abstract Club joined in a helpful amici curiae brief on behalf of the defendants.

Worcester district registry of deeds. One of the strips abuts property of the defendants Allan and Marilyn Kurlan, and the other abuts land of the defendant Sherman. Tattan had purchased the original developers' interests in the two strips in 1986, intending to use them as street access to nearby land that his family owned and proposed to develop. (Neither of the two strips has ever physically existed as a way.) Tattan's suit also sought equitable relief to compel the defendants to remove various structural and landscaping improvements that they had made over the years in and around the strips.

The defendants denied Tattan's ownership and counter-claimed for a declaration that they were the fee simple owners of one-half of the proposed roads abutting their respective properties to the centerlines of the roads, pursuant to G. L. c. 183, § 58.[2] Following limited discovery, the parties filed cross motions for summary judgment. In 1990, a Superior Court judge entered summary judgment for Tattan declaring him the fee simple owner of both strips. The crux of the judge's decision was his conclusion that G. L. c. 183, § 58, did not apply to the deeds at issue. On the defendants' appeal, we reverse the judgment as based on an erroneous interpretation of G. L. c. 183, § 58.

The material facts are undisputed. In 1958, East Coast Builders, Inc., conveyed to John and Amalia Bergman a par-

---

[2]General Laws c. 183, § 58, as amended by St. 1973, c. 185, § 1, provides: "Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence, or other monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse and monument, in which case, (i) if the retained real estate is on the same side, the division line between the land granted and the land retained shall be continued into such way, water-course or monument as far as the grantor owns, or (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reserva-tion and not alone by bounding by a side line." The statute became effec-tive as of January 1, 1972, but contained a grandfather clause applicable to all the pre-1972 instruments relevant in this case. See St. 1971, c. 684, § 2; St. 1973, c. 185, § 2.

cel of land on Barry Road, a public street in Worcester, described as Lot 23 on a plan entitled "Revisions Salisbury Estates." East Coast was the owner and original developer of "Salisbury Estates" and had recorded the plan earlier in 1958 in the Worcester district registry of deeds. The deed specifically referred to the recorded plan, and the relevant bounds in the deed description included the following:

> "THENCE northwesterly and northerly by a curve to the right forming the junction of said Barry Road and land shown on said plan as, 'Reserved for Future Roadway,' for a distance of twenty-eight and seventy-one hundredths (28.71) feet to a point;

> "THENCE N. 21 03´50´´ E. by said land 'Reserved for Future Roadway,' one hundred twenty-two and ninety-two hundredths (122.92) feet to a point. . . ."

In 1965, another developer, Ciociolo Builders, Inc., purchased the interest of East Coast's successor in interest in the strip designated as the future roadway. In 1973, the Bergmans conveyed Lot 23 to Sherman. All of the Salisbury Estates deeds stated that grantees acquired "the right, in common with others, to pass and repass over all streets as shown on [the] plan."

In 1971, Ciociolo Builders conveyed to the Kurlans a parcel of land on Barry Road in a development westerly of the Salisbury Estates area, described as Lot 1 on a plan entitled "Salisbury Farms Sec. IV." Ciociolo Builders owned and was developing the "Salisbury Farms" area and had recorded its plan in 1971 in the Worcester district registry of deeds. The deed to the Kurlans expressly referred to that plan and included the following description of the relevant bounds:

> "THENCE N. 63 36´30´´ W. 84.05 feet by said Sisters of Mercy land to land now or formerly of one Tattan and a prospective street;

"THENCE S. 14 04´30˝ W. 146.46 feet by said pro-
spective street to Barry Road. . . ."

On the plan to which reference was made, the "prospective
street" is designated "reserved for future street purposes."

Tattan and his family at all relevant times owned an ex-
tensive tract northerly of and adjacent to, but outside of, the
two developments. Both prospective roadways ran from
Barry Road to the edge of Tattan's land. Ciociolo Builders
had attempted to buy the Tattan tract for development, but
Tattan would not sell. In 1983, Ciociolo Builders sold its in-
terest in the two strips to Tattan by quitclaim deed for $500.
In 1984, Tattan informed the defendants of his intention to
build roads over the two reserved strips, thereby connecting
his tract to the public street. His proposal met with strenuous
objections from the Kurlans, for whom Ciociolo Builders had
installed a driveway and planted trees partly on the "future
street," as well as from Sherman, who had planted grass and
shrubs, built a shed, and installed a sprinkler on or next to
the "future roadway."[3] This proceeding ensued.

General Laws c. 183, § 58, establishes an authoritative
rule of construction for all instruments passing title to real
estate abutting a way,[4] whether public or private and
whether in existence or merely contemplated (so long as it is

---

[3] In 1986, Tattan also acquired a lot on Barry Street on the opposite side
of the strip designated "Reserved for Future Roadway" from Sherman's
lot. The deed to Tattan contained bounds descriptions and plan references
similar to those in Sherman's deed. The defendants and Tattan are the
only abutters of the strips in the Salisbury Estates and Salisbury Farms
developments.

[4] The judge's summary judgment opinion reflected some doubt whether
the proposed roadways at issue were "ways" within the meaning of the
statute. None of the parties has raised the issue on appeal, however. They
all fully accept the applicability of § 58 to the situation and, indeed, rely
upon it to support their respective positions. In any event, we have no
doubt that the proposed roadways here were "ways" for § 58 purposes. See
*Lemay* v. *Furtado,* 182 Mass. 280, 281 (1902); *Ralph* v. *Clifford,* 224
Mass. 58, 60 (1916); *Murphy* v. *Mart Realty of Brockton, Inc.,* 348 Mass.
675, 677-678 (1965). Contrast *Emery* v. *Crowley,* 371 Mass. 489, 493
(1976), where the court held that no way existed because both the metes
and bounds descriptions of the lot in the deeds and the plans incorporated
in the deeds plainly showed the parcel at issue as belonging to and retained

sufficiently designated, see *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. 675, 677-678 [1965]; *Brennan* v. *DeCosta*, 24 Mass. App. Ct. 968 [1987]). Section 58 mandates that every deed of real estate abutting a way includes the fee interest of the grantor in the way — to the centerline if the grantor retains property on the other side of the way or for the full width if he does not — unless "the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line." The statute incorporates the basic common law principle of presumed intent with regard to conveyed land abutting an actual or contemplated way owned by the grantor. The common law presumed that the grantor intended to pass title to the center of the way.

This presumption was strong but could be overcome by clear proof of a contrary intent of the parties "ascertained from the words used in the written instrument in the light of all the attendant facts." *Suburban Land Co.* v. *Billerica*, 314 Mass. 184, 189 (1943). See also *Erickson* v. *Ames*, 264 Mass. 436, 442-444 (1928); *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. at 679-680. Section 58's mandate that title in the way is conveyed to the abutting grantee, however, is stricter than the common law rule which it codified and superseded. The statutory presumption is conclusive when the statute applies, unless (for purposes of this case) the "instrument passing title" evidences a different intent

---

by the grantor. In addition, in *Emery* there appears to have been no language of record designating the parcel as a way, unlike the instant case.

"by an express . . . reservation."[5] Other "attendant" evidence of the parties' intent is no longer probative.[6]

The judge saw express reservations removing the case from § 58 in the fact that the deeds explicitly referred to plans on which the two original subdividers expressly designated the two strips, respectively, as "reserved" for "future roadway" and for "future street purposes." He placed particular reliance upon the principle that "[a] plan referred to in a deed becomes a part of the contract so far as may be necessary to aid in the identification of the lots and to determine the rights intended to be conveyed." *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350, 354 (1926). The judge concluded that the two reservations of designated fifty-foot strips for future ways on the plans evidenced the original grantors' intent not to convey any fee simple rights in the strips but to retain ownership of the parcels themselves, which ultimately passed to Tattan.

The judge's conclusion was unwarranted.[7] The plan designations that he found determinative did not qualify as excep-

---

[5]No legislative history of G. L. c. 183, § 58, appears to exist. Neither of the only reported cases involving the statute, *Emery* v. *Crowley*, 371 Mass. 489 (1976), and *Brennan* v. *DeCosta*, 24 Mass. App. Ct. 968 (1987), discusses its origins or purpose. The amici invite us to speculate that its purpose was assistance to conveyancers. However, we deem no analysis of legislative history necessary in resolving this appeal because the statute is clear and unambiguous on its face. See *Plymouth County Retirement Assn.* v. *Commissioner of Pub. Employee Retirement*, 410 Mass. 307, 309 (1991).

[6]Tattan relies upon the 1989 affidavit of Ciociolo Builders' principal, Anthony L. Ciociolo, executed eighteen years after Ciociolo Builders, by Anthony Ciociolo, recorded its plan and conveyed to the Kurlans. The affidavit states that Anthony Ciociolo had "the express intention of reserving the fee" in the strip. Such an affidavit would carry little weight at common law, see *Murphy* v. *Mart Realty of Brockton, Inc.*, 348 Mass. at 681, and is irrelevant in situations falling within § 58. Where § 58 is not by its terms applicable, however, conveyances of land abutting a way continue to be construed in accordance with the common law. See *Emery* v. *Crowley*, 371 Mass. 489, 493-494 (1976).

[7]Even in the absence of § 58, a grantor's designation and reservation of a strip as a proposed street on a plan incorporated into a deed does not prove his intent to reserve the fee in the strip. No Massachusetts case we know of so holds, nor has Tattan cited any. Such a reservation might, indeed, be read only to create an easement of way in the strip, see *Murphy*

tions to the statutory presumption that the fee in the ways passed to the abutting grantees. Both the language and the grammatical structure of the statute require that what must be expressly excepted or reserved in order to satisfy § 58(*b*) is the antecedent "fee interest," not some other interest or element of land use or enjoyment. Even were the plans here read into the deeds, they state at most an intention that the designated strips be used as roadways in the future. Such designations may give rise to nonpossessory, nonexclusive easements or rights of way in the grantors and their successors in interest, but they are plainly not express reservations of the underlying fee.

A plan is not, however, appropriately incorporated into a deed when measuring compliance with § 58(*b*). The rule incorporating plans into deeds on which the judge and Tattan relied has a different purpose. Its rationale is the validation of conveyances of land when the deed description is insufficient[8] but when "a definite and accurate description" of the land being conveyed — "the courses, distances and other particulars" enabling parties "to locate the land" on the face of the earth, *Larsen* v. *Dillenschneider*, 235 Mass. 56, 57-58 (1920) — can be ascertained from a recorded plan referred to in the deed. See Park, Real Estate Law § 244 (2d ed. 1981).

The authorities cited by the judge and Tattan for the incorporation principle reflect the rule's limitations. In *Murphy*

---

v. *Mart Realty of Brockton, Inc.*, 348 Mass. at 678, or even as evidence of an intent to dedicate the way to public use. Cf. *Uliasz* v. *Gillette*, 357 Mass. 96, 104 (1970) (which held, however, that the recording of the plan and subsequent conveyance of lots referencing the plan were not in themselves enough to prove an intent to dedicate). When such ambiguities exist, we would, of course, ordinarily construe the instruments against the grantor and in favor of the grantee. See *Johnson* v. *Jordan*, 2 Met. 234, 240 (1841); *Fulgenitti* v. *Cariddi*, 292 Mass. 321, 326 (1935); *Dale* v. *Bedal*, 305 Mass. 102, 103 (1940).

[8] "'In order to make a valid conveyance of land, it is essential that the land itself . . . be capable of identification, and, if the conveyance does not describe the land with such particularity as to render this possible, the conveyance is absolutely nugatory . . . .'" *McHale* v. *Treworgy*, 325 Mass. 381, 385 (1950), quoting from Tiffany, Real Property § 990 (3d ed. 1947).

v. *Mart Realty of Brockton, Inc.*, 348 Mass. at 678, the court made a classic application of the rule to "determin[e] whether the strip [at issue] has been sufficiently defined as a proposed street" (which it had not in the deeds referring to the plan). The court's purpose was to determine the validity of an abutting owner's claim to an easement in the way, under "the familiar rule that 'when a grantor conveys land bounded on a street or way, he and those claiming under him are estopped to deny the existence of such street or way, and the right . . . acquired by the grantee . . . [is at least] an easement of way . . . [along] the entire length of the way, as it is then laid out or clearly indicated . . . . ' "[9] *Id.* at 677.

*Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. at 353-355, similarly involved reliance upon a plan referred to in a deed to determine the abutting grantee's entitlement to an easement by implication along a proposed street shown on the plan but never established or used as such. The court carefully noted that "a reference to a plan in a deed, although accompanied by its use for description or bounds, does not result in the conveyance of rights not necessary for the enjoyment of the premises. . . . [T]he only necessity contemplated in ordinary cases is that of access to public highways.' " *Id.* at 354.

The incorporation rule has nothing to do with the conveyance of exclusive possessory — ownership — interests in land. Rather, it involves the determination of the physical bounds and the quantity of land conveyed. The only property interests the rule has been held to implicate are the nonpossessory, nonexclusive interests of abutters, such as easements and similar servitudes. The incorporation rule was not in-

---

[9]In the *Murphy* case, the court ultimately held that the abutting grantees received not only a right of way but also ownership of the fee to the middle of the contested strip, by virtue of the "strong" common law presumption. The deed's express incorporation of a plan designating the strip as a "proposed street" was deemed insufficient to establish the grantor's intent to reserve the fee, even when combined with the grantor's payment of taxes on the property and trial testimony denying an intent to convey a fee to the center of the strip. Those facts make *Murphy* quite similar to the present case and, as argued by the defendants, provide common law support for the result reached here under § 58.

tended and has never been used to determine title — i.e., the quality and durational extent of the estate taken by the purchaser.

Consequently, the contents of incorporated plans are irrelevant to the application of § 58. The plain language of the statute speaks only of "instrument[s] passing title," that is, deeds. In order to benefit from § 58(b), the express reservation of a fee interest that effectively removes an abutting monument from the operation of § 58 must be contained in the deed itself, not in some other document. The deeds to the defendants here did not contain the requisite express exceptions or reservations evidencing an intent on the part of the grantors to retain the fee in the proposed roadways, as required by G. L. c. 183, § 58(b).

Accordingly, we reverse the judgment for the plaintiff Tattan and remand the case to the Superior Court for entry of judgment for the defendants. The judgment shall provide that the defendant Sherman is the owner in fee simple to the middle of the way designated as "reserved for future roadway" in Plan Book 235, Plan 16, in the Worcester district registry of deeds; and that the defendants Kurlan are the owners in fee simple to the middle of the way designated as "reserved for future street purposes" in Plan Book 319, Plan 101, in the Worcester district registry of deeds. The judgment shall also provide that the plaintiff Tattan, as an abutter to the way designated as "reserved for future roadway" on Plan 16, has the rights of an abutting owner as to that roadway, including an easement of way, but has no right to create and develop as a road either that way or the way designated as "reserved for future street purpose" on Plan 101 in the absence of agreement by the defendants.

*So ordered.*