Connors, J.

*297
INTRODUCTION

Plaintiff Smaland Beach Association, Inc. (“Sma-land”) brought this action against defendants Arthur and Patricia Genova (the “Genovas”) seeking to establish the ownership of a disputed parcel of land and to obtain a permanent injunction refraining the Genovas from interfering with Smaland’s use of the land. The matter is before the court on Smaland’s motion for a preliminary injunction. For the following reasons, Smaland’s motion for a preliminary ini unction is DENIED.

BACKGROUND

Smaland Beach Association is a corporation owned by the residents of the Smaland Beach community, a subdivision located in Plymouth, Massachusetts near Island Pond. The Genovas own Lot 18 of the Smaland Beach subdivision and are members of the Smaland Beach Association. The northwesterly border of Lot 18 abuts Crescent Road and the northwesterly side of Crescent Road is coincident with the shoreline of Island Pond. Lot 19, which abuts the eastern side of Lot 18, is owned by Smaland. Lot 19 also abuts Crescent Road on the northwesterly side. Over the years, Smaland has used Lot 19 and the portion of Crescent Road that lies between Lot 19 and Island Pond as a private beach and recreation area called Smaland Beach. Smaland contends that the portion of land between the edge of Crescent Road and the pond adjacent to Lot 18 but bordering Lot 19 (the “disputed area”) is also a part of Smaland Beach. The Genovas dispute this claim.
When the Genovas purchased Lot 18 in 1975 there was a dock moored in the disputed area. Since 1975, the dock has been used seasonally. The Genovas, or members of their family, have been responsible for taking the dock in and out of the water over the years and the bolts to secure the dock are usually kept in the Genovas’ home. The Genovas have been the primary users of the dock for the past thirty years, consistently having one or more boats tied to the dock each year. Other Smaland members have also used the dock to moor their boats.
In the late 1970s, the Genovas constructed a boat ramp in the disputed area. The Genovas and other Smaland members used the ramp to launch their boats into the pond. The ramp, constructed out of cinderblocks and maintained solely by the Genovas, deteriorated overtime. In 1985, the Genovas and other Smaland members decided to construct a paved boat ramp in the disputed area. The Genovas and Smaland each contributed one-quarter of the cost of the construction of the ramp.
Since the boat ramp has been paved, the Genovas, along with several other members of Smaland, have used the boat ramp to launch their boats. The Genovas contend that they have been solely responsible for the maintenance of the ramp, including keeping it clear of debris and maintaining the stone jetties which line either side of the ramp to prevent erosion. The Genovas have also often parked their cars on the ramp, moving them upon request to allow Smaland members access to the ramp.
The Genovas contend that they own the disputed area and that any use of the property by Smaland, including use of the dock and boat ramp, has been a permissive use based on neighborly courtesy. Sma-land contends that the Genovas do not own the disputed area. In the alternative, they contend that even if the Genovas do own the disputed area, Smaland has openly and continuously used the area over the years in a manner which establishes a prescriptive easement. In recent years, the parties’ disagreement over the ownership of the disputed area, coupled with the Genovas’ attempts to limit Smaland’s access to the land, has caused tension in the Smaland community, resulting in response by the Plymouth Police Department to alleged threats and acts of vandalism. Sma-land brought suit against the Genovas on January 20, 2005 seeking a determination of ownership of the disputed area as well as a permanent injunction preventing the Genovas from interfering with Smaland’s use of the land. Smaland also seeks damages for the Genovas’ alleged intentional interference with Smaland’s right of use. The matter is before the court on Smaland’s motion for a preliminary injunction.

DISCUSSION

To succeed in an action for a preliminary injunction, a plaintiff must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the plaintiffs likelihood of success on the merits, the risk of irreparable harm to the plaintiff outweighs the potential harm to the defendant in granting the injunction. Tri-Nel Management, Inc. v. Board of Health of Barnstable, 433 Mass. 217, 219 (2000), citing Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609,617 (1980).

(A) Likelihood of Success on the Merits

The plaintiff contends that the Genovas have no right to exclude Smaland from the disputed area or otherwise interfere with the beach, recreation and boating activities undertaken there because the Geno-vas do not own the fee in the land and, regardless of ownership, Smaland has both a prescriptive and an implied easement to use the disputed area.

Ownership of the Disputed Area

Under G.L.c. 183, §58, which applies to “all instruments passing title to real estate abutting a way, whether public or private and whether in existence or merely contemplated, . . . every deed of real estate abutting a way includes the fee interest of the grantor in the way.” Tattan v. Kurlan, 32 Mass.App.Ct. 239, 242-43 (1992). This fee interest extends “to the cen-terline of the road if the grantor retains property on *298 the other side of the way or for the full width if he does not . . . unless ‘the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line.’ ” Id., quoting G.L.c. 183, §58.
According to the subdivision plan on record, the original owners of Lot 18 did not retain any property on the north side of Crescent Road when the lot was conveyed.[1] It follows that under G.L.c. 183, §58, when Lot 18 was transferred, the fee in the full width of Crescent Road was included in that conveyance. Accordingly, the Genovas, more likely than not, own the fee in the full width of Crescent Road.
Smaland does not dispute that the Genovas maintain the fee in at least a portion of Crescent Road. Smaland does, however, contend that in order to determine which portion of the road belongs to the defendants, Lot 18’s boundary lines should be continued into Crescent Road at straight angles. Such an extension would give the Genovas the fee in only a small portion of the disputed area. The Genovas contend that the side lot lines should be extended into the road at a bearing perpendicular to the street’s center-line, giving them tire fee in the entire area.[2]
No court in Massachusetts has directly addressed the issue of what bearing boundary lines should be continued at across a way. However, it appears that common practice requires boundary lines to be extended into a way at an angle perpendicular to the road’s centerline.[3] Accordingly, Lot 18’s boundary lines should be extended perpendicularly into Crescent Road. As the northerly border of Crescent Road is coincident with the pond’s shoreline, such an extension of the lot’s boundary lines would give the Genovas the fee in the entire disputed area.[4]

Easement Rights

Even if it is determined that the Genovas own the fee in the disputed area, Smaland contends that the Genovas cannot exclude Smaland from the area or interfere with Smaland’s use of the land because Smaland has both an implied and a prescriptive easement of use.
When a grantor conveys land bounded on a street or way, the grantee acquires an easement of way over the street. Murphy v. Mart Realty of Brockton, Inc., 348 Mass. 675, 677-78 (1965). Accordingly, Smaland, more likely than not, will be able to establish that it has an easement by implication to enter and travel over the Genovas’ portion of Crescent Road. However, even if the disputed area is determined to be a part of Crescent Road, as Smaland contends, any easement rights maintained by Smaland would be limited to the right to travel over the road and would not include the right to participate in recreational and boating activities on the land.
Smaland argues that it has acquired the right to participate in recreational and boating activities in the disputed area by prescription. Under Massachusetts law, an easement by prescription may be acquired in another’s land by the (1) continuous and uninterrupted, (2) open and notorious, (3) and adverse use of that land for a period of not less than twenty years. Stone v. Perkins, 59 Mass.App.Ct. 265, 266 (2003) citing Ryan v. Stavros, 348 Mass. 251 (1964). “Wherever there has been use of an easement for twenty years unexplained, it will be presumed to be under claim of right and adverse, and will be sufficient to establish right by prescription.” Ivons-Nispel, Inc. v. Lowe, 347 Mass. 760, 763 (1964). A presumption of adverse use can be overcome by showing that the use was instead “controlled” or permissive. Id.; Spencer v. Rabidou, 340 Mass. 91, 92-93 (1959).
Several facts on the record tend to establish that the Genovas exercised control over Smaland’s use of the disputed area. The Genovas, or members of their family, were always involved in putting the boat dock in and out of the water and the Genovas usually kept the bolts needed to secure the dock in their home during the off-season. The Genovas often blocked access to the boat ramp with their vehicles and moved them upon request in order to grant Smaland members access to the ramp. The Genovas also appear to have been solely responsible for the maintenance of the disputed area. The Genovas independently built and maintained the original cinderblock boat ramp and were the only Smaland members to do maintenance work on the boat ramp once it was paved. The Genovas were also the impetus behind paving the boat ramp and they paid for at least one-quarter of the cost of that project, which was plainly disproportionate to any right which was simply derivative from their membership in Smaland.
While Smaland has submitted several affidavits establishing its recreational use of the disputed area over the years, it is not obvious from these averments that Smaland’s use of the disputed area was adverse. It appears just as likely, based on evidence of the Genovas’ apparent control of the area, that Smaland’s use of the land was permissive. Therefore, Smaland does not have a reasonable likelihood of success in establishing the existence of a prescriptive easement.

(B) Irreparable Harm

When a private party seeks a preliminary injunction, the moving party is required to show that an irreparable injury would occur without immediate injunctive relief.LeClair v. Town ofNorwell, 430 Mass. 328, 331 (1999). When analyzing the potential risk of irreparable harm, the court must balance the risk of harm to the moving party against any similar risk of irreparable harm to the opposing party. Packaging Industries Group, Inc. v. Cheney, 380 Mass, 609, 617 (1980). “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits. Only *299 where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Id.
Both parties contend that an adverse ruling on Smaland’s request for a preliminary injunction will cause them irreparable harm. Smaland contends that the temporary loss of a valuable properly right is, by definition, irreparable and that in addition to this harm, failure to grant a preliminary injunction will lead to further disruption and diminution of Smaland Beach’s collegial atmosphere. The Genovas argue that Smaland has ample room to moor a dock and launch boats from its own frontage and that, regardless, the point is moot as it is the middle of winter.
Failure to issue a preliminary injunction would not cause Smaland immediate irreparable harm. Smaland’s use of the disputed area is seasonal. Any potential loss of Smaland’s right of use would not occur until the summertime. Of greater importance, even if the potential harm to Smaland were immediate, it would not be greater than the harm the Genovas would suffer if a preliminary injunction were granted: issuing a preliminary injunction to protect Smaland’s property right plainly risks depriving the Genovas of the use of property that is theirs. The balance of potential harm caused by the diminution of the collegial atmosphere of Smaland Beach also does not favor one party over the other. Whether a preliminary injunction is issued or not, the parties will continue to be at odds, resulting in continuous tension in the community.[5]
For the foregoing reasons, Smaland has failed to establish a likelihood of success on the merits of its claims and has failed to show that the risk of irreparable harm to Smaland outweighs the risk of potential harm to the Genovas. Accordingly, Smaland’s motion for a preliminary injunction is denied.

ORDER

For the reasons stated herein, it is hereby ORDERED that the plaintiffs motion for a preliminary injunction be DENIED.

In fact, the plan depicts no stretch of land on the northerly border of Crescent Road and shows the north side of Crescent Road as being coincident with the shoreline of the pond. Whether the boundary of the shoreline has changed over time or whether the initial plan was simply erroneous as to the existence of some land between the road and the shoreline is unclear.

Both possible extensions of Lot 18’s boundary lines are depicted in the map attached to Plaintiffs Memorandum in Support of its Motion for a Preliminary Injunction.

The Genovas have submitted in their opposition to Smaland’s request for a preliminary injunction an affidavit of Attorney Henry H. Thayer, an expert on -the law of real property and land title issues, supporting this interpretation. The defendants also cite a surveying text, Brown, Robillard & Wilson, Boundary Control andLegalPrinciples (3rd ed.), which states that boundary lines extended into a way run “from the street termini of the property lines to the center line or thread of the street in a direction that is at right angles to the center line of the street.”

This would appear to be tme whether the disputed area is a part of Crescent Road, as Smaland claims, or whether it is a separate parcel of land, as the Genovas contend. See Paine v. Woods, 108 Mass. 160, 169-70 (1871) (a grant of land bordering a great pond includes a fee in the land extending to the seasonal low watermark of the pond).

Ihe submissions from both parties reflect that these tensions had escalated to the point where intervention of the town police had needed to be sought. It is the Court’s firm expectation that all parties involved in this dispute will await the outcome of a trial on the merits of this case, with no breach of the peace pending its resolution.