SHEAR vs. SYLVIA, MISC 20-000198

































 
 ALLYSON SHEAR, Plaintiff, v. ROBERT C. SYLVIA and JANE K. SYLVIA, Defendants
 MISC 20-000198 
 March 17, 2021
BRISTOL, ss.
ROBERTS, J.
MEMORANDUM OF DECISION AND ORDER ALLOWING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT














 INTRODUCTION 





 Plaintiff Allyson Shear ("Ms. Shear") commenced this action with the filing of a verified complaint on June 1, 2020 against defendants Robert C. and Jane K. Sylvia ("the Sylvias," or "Mr. Sylvia" and "Ms. Sylvia" respectively) seeking a declaration as to the extent of Ms. Shear's rights over a way more fully described below. In particular, there are disputes between Ms. Shear and the Sylvias regarding the ownership of the fee in a portion of the way, Ms. Shear's right to maintain and improve the way, and whether the Sylvias are precluded from erecting fence posts along the boundary of the way. 





 Having resolved some issues among themselves, the parties reported to the court on December 8, 2020 that the remaining issues were matters of law, that no discovery was necessary in this case and that the matter could proceed to hearing on a motion for summary judgment. Plaintiff Allyson Shear's Motion For Summary Judgment ("the Motion") and associated documents were filed on January 11, 2021 and the Sylvias' opposition thereto was filed on February 12, 2021. A hearing on the Motion was held by videoconference on March 9, 2021. For the reasons set forth below, the Motion is ALLOWED.





UNDISPUTED FACTS 





 The following facts established in the record and pertinent to the motion and opposition thereto are undisputed or are deemed admitted. [Note 1] 





 1. Ms. Shear owns the land and buildings located at 126 Horseneck Road, Dartmouth, Massachusetts by virtue of a deed to her from Diane St. Pierre, Trustee of the Theresa G. Sowle Revocable Trust dated April 24, 2015 and recorded in the Bristol County (S.D.) Registry of Deeds ("the Registry") at Book 11350, Page 220 ("the Shear Property"). Verified Complaint ("VC") Ex. A; Plaintiff's Statement Of Material Facts ("PSOMF") ¶ 1. 





 2. The Sylvias own abutting land and buildings, also known and numbered as 126 Horseneck Road, Dartmouth, Massachusetts by virtue of a deed to them from Albert Payne Hesford ("Mr. Hesford") dated June 10, 1974 and recorded in the Registry at Book 1685, Page 745 ("the Sylvia Property"). VC Ex. B; PSOMF ¶ 2. 





 3. The Shear Property and the Sylvia Property were originally held in common ownership by Mr. Hesford, at which time the property consisted of 7.2 acres located between Horseneck Road and the Slocum River. VC Ex. C; PSOMF ¶ 3. 





 4. In 1966, Mr. Hesford divided off a 1.2 acre-lot abutting the Slocum River, shown as Lot A on a plan entitled "Plan Of Land Owned By Albert Payne Hesford Dartmouth, Mass. Scale 1" = 60' July 25, 1966 Walter E. Rowley & Associates West Wareham, Mass." ("the 1966 Plan"). VC Ex. C. 





 5. The 1966 Plan was endorsed by the town of Dartmouth ("the Town") planning board as a plan not requiring approval under the subdivision control law, with the further provisos that "[t]he existing way shown hereon is being defined for the purpose of serving Lot A only and is not suitable for further division of the remaining area" and that "[t]his conveyance is made upon the express condition to create a private way for the common use, and the grantee, his heirs, administrators, executors, or assigns shall not request the Town of Dartmouth to make it a public way." VC Ex. C. 





 6. The 1966 Plan shows a 30-foot-wide way running from Horseneck Road on the west to the eastern most line of Lot A as it abuts the 30-foot-wide way ("the 30-Foot Way"). VC Ex. C. 





 7. The 1966 Plan also shows an area labeled "Existing Way" located largely within the boundaries of the 30-Foot Way before passing beyond the 30-Foot Way into Mr. Hesford's remaining property. VC Ex. C. 





 8. Lot A as shown on the 1966 Plan is shown as Lot 52 on the Town's assessor's map 23. PSOMF ¶ 5. 





 9. Mr. Hesford conveyed Lot A to one David Sowle ("Mr. Sowle") by deed dated August 11, 1966 and recorded in the Registry at Book 1535, Page 127 ("the 1966 Deed"). Defendants' Opposition Memorandum To Plaintiff's Motion For Summary Judgment ("Opposition") Ex. B. 





 10. The metes and bounds description of Lot A contained in the 1966 Deed, insofar as it abuts the 30-Foot Way, is: "Beginning at the original point of beginning S 47° 33' 10" E in line of said way one hundred (100) feet to an angle." Opposition Ex. B. 





 11. The 1966 Deed also conveys "a right of way shown on the above mentioned plan." Opposition Ex. B. 





 12. By deed dated August 6, 1972 and recorded in the Registry at Book 1652, Page 18 ("the 1972 Deed"), Mr. Hesford conveyed a second lot to Mr. Sowle, this lot also shown on the 1966 Plan abutted on the west by Horseneck Road, on the south by the 30-Foot Way and on the east by Lot A, and shown as Lot 51 on the Town's assessor's map 23 ("Lot 51"). PSOMF ¶ 6; Opposition Ex. C; Affidavit. 





 13. The 1972 Deed describes the southern boundary of Lot 51 as running "in the northerly line of said [30-Foot Way]" along two courses of 114.25 feet and 283.81 feet. Opposition Ex. C. 





 14. The 1972 Deed further references the 1966 Plan as follows: 





 The above described premises are shown on Plan of Albert Payne Hesford, Dartmouth, Mass. dated July 25, 1966, Walter E. Rowley & Associates, West Wareham, Mass. on file in the Bristol County (S.D.) Registry of Deeds in Plan Book 73 Page 9. 





 However, conveying no interest is said existing way as shown on said plan as it abuts this property. 





 However, conveying to the said grantee a right of way over said way for the purposes of passing and repassing over said way to the extent it abuts the above described property and other property of this grantee. 





 Opposition Ex. C. 





 15. In March 2019, Ms. Shear engaged a landscaping company to remove dead trees and branches along the side of the 30-Foot Way adjacent to Lot 51, which threatened electrical lines serving Lot 51. PSOMF ¶ 9.





 16. Shortly after Ms. Shear's landscapers commenced work, Mr. Sylvia told them to leave, and directed them to stay away from trees immediately adjacent to the 30-Foot Way and to work from within the boundaries of Lot 51. PSOMF ¶ 10. 





 17. Approximately two weeks later, surveyors from an engineering company began survey work along the entire 30-Foot Way, identifying its northern boundaries, which abut Lot 51 and Lot A. See PSOMF at ¶ 11. 





 18. One of the members of the survey team told Mr. Timothy Hayes, who resides with Ms. Shear, that the Sylvias intended to install a fence along the edge of the 30-Foot Way and Lot 51 and Lot A. PSOMF ¶ 11. 





 19. On April 9, 2019, counsel for Ms. Shear caused a letter to be delivered to the Sylvias in which counsel told the Sylvias that it would be an unlawful interference with Ms. Shear's right of access to the way to construct a fence along the edge of the way. VC Ex. D; PSOMF ¶ 12. 





 20. In August 2019 a contractor engaged by the Sylvias installed thirteen fence posts, each six feet high and with concrete footings, twelve of which were located along the northern boundary of the 30-Foot Way and one of which is located approximately two feet within the boundary of the 30-Foot Way. PSOMF ¶ 14. 





 21. One of the fence posts is situated on the northern boundary of the 30-Foot Way as it abuts Lot A. PSOMF ¶ 15. 





 22. The fence posts interfere with Ms. Shear's access to the 30-Foot Way. PSOMF ¶ 16. 





STANDARD OF REVIEW 





 Generally, summary judgment may be entered if the "pleadings, depositions, answers to interrogatories, and responses to requests for admission  together with the affidavits  show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Mass. R. Civ. P. 56 (c). In viewing the factual record presented as part of the motion, the court draws "all logically permissible inferences" from the facts in favor of the non-moving party. Willitts v. Roman Catholic Archbishop of Boston, 411 Mass. 202 , 203 (1991). "Summary judgment is appropriate when, 'viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law.'" Regis College v. Town of Weston, 462 Mass. 280 , 284 (2012), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117 , 120 (1991). 





DISCUSSION 





 Ms. Shear describes the issues to be resolved as follows: (1) whether Ms. Shear owns the 30-Foot Way as it abuts Lot A from its centerline to the boundary of Lot A pursuant to the derelict fee statute, G. L. c. 183, § 58; (2) whether Ms. Shear has a general right of way over the entire 30-Foot Way, including the right to unobstructed access and the ability to repair and improve the way as reasonably necessary to its use; and (3) whether Ms. Shear's right of way over the 30-Foot Way prevents the Sylvias from erecting fence posts along the boundary between the 30-Foot Way and the Shear Property. For their part, the Sylvias concede that the single fence post installed within, not on the boundary of, the 30-Foot Way interferes with Ms. Shear's right of passage. They also acknowledge that Ms. Shear has the right to maintain the right of way, but contend that Ms. Shear should provide them with reasonable notice of such work and obtain the Sylvias' approval therefor. However, the Sylvias dispute the contentions that Ms. Shear owns that portion of the 30-Foot Way abutting Lot A to its centerline and that the remaining fence posts installed along the boundary between the 30-Foot Way and Lot 51 interfere with Ms. Shear's easement rights. As a result, the issues for resolution are (1) whether Ms. Shear owns the portion of the 30-Foot Way abutting Lot A to its centerline, (2) whether Ms. Shear is obligated to provide the Sylvias with notice of any maintenance, repair or improvement work done within the confines of the 30-Foot Way and to obtain their approval for such work, and (3) whether the fence posts installed along the boundary between Lot 51 and the 30-Foot Way interfere with Ms. Shear's easement rights. Each issue is addressed in turn.





Ownership Of The Fee To The Centerline Of The 30-Foot Way As It Abuts Lot A General Laws c. 183, § 58, commonly known as the derelict fee statute, states in pertinent part that: 





 Every instrument passing title to real estate abutting a way, whether public or private, watercourse, wall, fence or other similar linear monument, shall be construed to include any fee interest of the grantor in such way, watercourse or monument, unless (a) the grantor retains other real estate abutting such way, watercourse or monument, in which case, . . . (ii) if the retained real estate is on the other side of such way, watercourse or monument between the division lines extended, the title conveyed shall be to the center line of such way, watercourse or monument as far as the grantor owns, or (b) the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line. 





The legislation creating the derelict fee statute provides by its express terms that, with respect to recorded land such as Lot A, the statute operates retroactively. [Note 2] The statute "establishes an authoritative rule of construction for all instruments passing title to real estate abutting a way, whether public or private and whether in existence or merely contemplated (so long as it is sufficiently designated)." Tattan v. Kurlan, 32 Mass. App. Ct. 239 , 242-243 (1991) (citations omitted).





 "Section 58 mandates that every deed of real estate abutting a way includes the fee interest of the grantor in the wayto the centerline if the grantor retains property on the other side of the way or for the full width if he does notunless 'the instrument evidences a different intent by an express exception or reservation and not alone by bounding by a side line.'" Id. at 243. Section 58 is "stricter than the common law rule which it codified and superseded. The statutory presumption is conclusive when the statute applies, unless . . . the 'instrument passing title' evidences a different intent 'by an express  reservation.'" Id. at 243-244. Application of the statute to this case appears straightforward. The 1966 Deed describes the boundary between Lot A and the 30-Foot Way as "[b]eginning at the original point of beginning S 47° 33' 10" E in line of said way one hundred (100) feet to an angle." Unlike the 1972 Deed, there is no express reservation of the fee, either in the 30-Foot Way or in the Existing 

Way. 





 While not easily followed, the Sylvias appear to contend that the area between the Existing Way and the 30-Foot Way abutting Lot A is a buffer area, not included in the Existing Way. Presumably, although not expressly stated, the Sylvias contend that, as a result, the derelict fee statute does not apply, Lot A not abutting a way. The language of the 1966 Deed, when read in conjunction with the 1966 Plan, does not support this view. The 1966 Deed describes the boundary of Lot A as running on a course "in line of said way one hundred (100) feet to an angle" (emphasis added). The 1966 Plan shows the 30-Foot Way as abutting Lot A and running in a line one hundred feet to an angle. The Existing Way in this area does not run in a straight line and does not end at an angle. Instead, it proceeds further into the Sylvia Property. The "said way" referenced in the 1966 Deed plainly references the 30-Foot Way. 





 The Sylvias also attempt to bolster their argument by relying on language from the 1972 Deed and the 1966 Plan, contending that language from both indicates Mr. Hesford's intent to retain the fee in the Existing Way. However, as noted by Ms. Shear, "[i]n order to benefit from § 58(b), the express reservation of a fee interest ... must be contained in the deed itself, not in some other document." Tattan, 32 Mass. App. Ct. at 247. Accordingly, language from the 1972 Deed and the 1966 Plan is not relevant to the analysis. [Note 3] This court concludes that Ms. Shear owns the fee in the 30-Foot Way to its centerline as it abuts Lot A. 





The Sylvias' Entitlement To Notice Regarding Work Done Within The Easement While acknowledging Ms. Shear's right to maintain the 30-Foot Way, the Sylvias contend that "in order to prevent further disputes between the neighbors [Ms. Shear] should provide reasonable notice to and approval of the Sylvias of any such improvement." Opposition at 2. Here, there is an express grant of "a right of way shown on the above mentioned plan" in the 1966 Deed and "a right of way over said way for the purpose of passing and repassing over said way to the extent it abuts the above described property and other property of this grantee" in the 1972 Deed. The law governing the construction of express grants of easements has been repeatedly stated: the goal is to ascertain the presumed intent of the grantor by reference, first and foremost, to the language of the grant and then, if necessary, to then existing circumstances. [Note 4] "When the language of the applicable instruments is 'clear and explicit, and without ambiguity, there is no room for construction, or for the admission of parol evidence, to prove that the parties intended something different.'" Hamouda v. Harris, 66 Mass. App. Ct. 22 , 25 (2006), quoting Cook v. Babcock, 61 Mass. 526 , 528 (1851). 





 Here, neither express grant contains a requirement of notice to or authorization by the owner of the servient estate prior to any work being done within the 30-Foot Way. The Sylvias have not cited to any authority for the proposition that such requirements can be implied, nor has the court, on brief review of its own, found supporting authority for that proposition. While not relevant to the analysis, the court is also of the view that granting authority to the Sylvias to approve in advance work done by Ms. Shear is not likely to prevent further disputes between the parties. It declines to interpret the easements at issue here as imposing those requirements on Ms. Shear as the owner of the dominant estate. [Note 5] 





The Fence Posts Located Along The Boundary Of The 30-Foot Way 





 Ms. Shear contends that the existence of the thirteen fence posts along the northern boundary of the 30-Foot Way "constitutes such an unreasonable interference with plaintiff's use of the way" that the Sylvias must be ordered to remove them. Plaintiff Allyson Shear's Memorandum In Support Of Her Motion For Summary Judgment at 7. It is true that "[t]he owner of the property burdened by the easement . . . may not use his land in a way that will interfere with the easement owner's right of use." Texon, Inc. v. Holyoke Machine Co., 8 Mass. App. Ct. 363 , 365 (1979), citing New York Cent. R.R. v. Ayer, 242 Mass. 69 , 75 (1922); Healey v. Smith Carriage Co., 265 Mass. 203 , 208 (1928); Sargeant v. Traverse Bldg. Trust, 267 Mass. 490 , 494-495 (1929); Mt. Holyoke Realty Corp. v. Holyoke Realty Corp., 292 Mass. 332 , 335 (1935); Cape Cod Hosp., Inc. v. Cape Cod Medical Center, Inc., 7 Mass. App. Ct. 873 (1979); Buckeye Pipeline Co. v. Keating, 229 F.2d 795, 798-799 (7th Cir. 1956); Tenneco v. May, 377 F. Supp. 941, 943-944 (E.D. Ky. 1974), aff'd 512 F.2d 1380 (6th Cir. 1975). So long as the Sylvias do not install fencing between the fence posts, thus blocking access from the Shear Property to the 30-Foot Way, it is difficult to see how the fence posts interfere with Ms. Shear's easement rights. That being said, the Sylvias have conceded the point. See note 1, supra. As a result, Ms. Shear is entitled to an order requiring the Sylvias to remove the fence posts. Texon, 8 Mass. App. Ct. at 366 ("The owner of property burdened by an easement whose use of that property impairs the rights of the holder of the easement may be enjoined from the infringing activity."). 





CONCLUSION 





 Based on the undisputed facts and for the foregoing reasons, Plaintiff Allyson Shear's Motion For Summary Judgment is ALLOWED. Judgment shall enter on Count II of the verified complaint declaring that Ms. Shear and her successors and assigns own the fee in the 30- Foot Way to its centerline as it abuts Lot A, that the thirteen fence posts installed along the northerly boundary of the 30-Foot Way unreasonably interfere with Ms. Shear's easement rights, and that the owners from time to time of the Shear Property are not obligated to provide advance notice to or to seek approval from the owners from time to time of the Sylvia Property before conducting maintenance, repair or improvement work within the boundaries of the 30-Foot Way in furtherance of their easement rights. In furtherance of this declaration, the Sylvias will be ordered to remove the thirteen fence posts along the northerly boundary of the 30-Foot Way by May 1, 2021.





 SO ORDERED 





FOOTNOTES
[Note 1] In particular, the Sylvias not having filed a response to Plaintiff's Statement Of Material Facts, the facts set forth therein are deemed to have been admitted. See Rule 4 of the Rules of the Land Court (2005). 

[Note 2] St. 1971, c. 684, § 2, provides that the act "shall take effect on January the first, nineteen hundred and seventy-two and shall apply to instruments executed on and after said effective date and to instruments executed prior thereto, except that as to such prior executed instruments this act shall not apply to land registered and confirmed under the provisions of chapter one hundred and eighty-five before said effective date or to the extent that any person or his predecessor in title has changed his position as a result of a decision of a court of competent jurisdiction." 

[Note 3] Even were those documents relevant, they do not advance the Sylvias' position. Language on the 1966 Plan, apparently imposed by the planning board, is not indicative of Mr. Hesford's intent to retain control of the 30-Foot Way in executing the 1966 Deed. In addition, that language can just as easily be read as indicating an intent by the planning board to wrest some control over the 30-Foot Way from the owners from time to time of Lot A, not from Mr. Hesford. And, that the 1972 Deed granted an express easement over the length of the 30-Foot Way for the benefit of both Lot 51 and Lot A is not indicative of Mr. Hesford's intent six years earlier in executing the 1966 Deed. JACE Boston, LLC v. Holland Dev., LLC, 89 Mass. App. Ct. 1108 , 2016 Mass. App. Unpub. LEXIS 183 at *1-2 (Rule 23.0), quoting Patterson v. Paul, 448 Mass. 658 , 665 (2007) ("The scope of an easement, 'derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances.'"). 

[Note 4] See Pearson v. Bayview Associates, Inc., 92 Mass. App. Ct. 1129 , 2018 Mass. App. Unpub. LEXIS 185 at *2 (Rule 23.0), quoting Sheftel v. Lebel, 44 Mass. App. Ct. 175 , 179 (1998) ("The basic principle governing the interpretation of deeds is that their meaning, derived from the presumed intent of the grantor, is to be ascertained from the words used in the written instrument, construed when necessary in the light of the attendant circumstances."); Adams v. Planning Bd., 64 Mass. App. Ct. 383 , 389 (2005) quoting from Boudreau v. Coleman, 29 Mass. App. Ct. 621 , 629 (1990) (to determine the existence and attributes of a right of way, look "to the intention of the parties regarding the creation of the easement or right of way, determined from 'the language of the instruments when read in light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable.'"). 

[Note 5] The parties' rights and obligations on this issue having been determined in accordance with the applicable law, it bears noting that the Existing Way, which is narrower than the 30-Foot Way, appears from the 1966 Plan to be the Sylvias' sole access to their home. Notice to the Sylvias of work that would block access to and from their home would be the neighborly thing to do and lessen the likelihood of blocked access causing harm to the Sylvias. 


 
 Home/Search 
 Land Cases by Docket Number
 Land Cases by Date 
 Land Cases by Name
 


 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.