MAZZOLA vs. O'BRIEN, 100 Mass. App. Ct. 424

 
 PHILIP J. MAZZOLA, trustee, [Note 1] vs. JOHN F. O'BRIEN & another. [Note 2]

100 Mass. App. Ct. 424
 April 7, 2021 - October 15, 2021

Court Below: Superior Court, Essex County
Present: Milkey, Hand, & Grant, JJ.

 

Easement. Real Property, Easement, Nuisance. Motor Vehicle, All-terrain vehicle, Permission to operate. Nuisance. Statute, Construction.

In a civil action brought by the plaintiff landowner claiming that the defendant neighbors were overburdening an easement on the plaintiff's property by driving all-terrain vehicles over the easement to access a beach, a Superior Court judge properly ruled in favor the defendants, where the express easement conveyed to the defendants in their deed did not limit the scope to pedestrian traffic [427-428]; and where nothing in the language of G. L. c. 90B, § 26 (e), or the regulations implementing the statute prohibited the defendants, who had clear legal authority, from operating all-terrain vehicles over the easement [428-431]. 

CIVIL ACTION commenced in the Superior Court Department on October 17, 2016. 

 The case was heard by David A. Deakin, J. 

William H. Sheehan, III, for the plaintiff.

Meredith A. Fine for the defendants.

 GRANT, J. The issue presented is whether defendants John F. and Bonita J. O'Brien (collectively, O'Briens) may drive all-terrain vehicles (ATVs) on an easement appurtenant to their property for the limited purpose of accessing a beach in Gloucester. The easement burdens the property of plaintiff Philip J. Mazzola, as trustee of the Seventeen Wingaersheek Realty Trust, who argues that the scope of the easement is limited to pedestrian traffic and that G. L. c. 90B, § 26 (e), prohibits the O'Briens from driving ATVs on the easement. Following a jury-waived trial on Mazzola's claims that the O'Briens were overburdening the easement and creating a nuisance, a judge of the Superior Court found in favor of the O'Briens. Mazzola appeals, and we affirm.

 Background. We set forth the facts as found by the trial judge, supplemented by undisputed facts from the record. In 1960, Bengt

 Page 425 

 Eriksson, as trustee of the Ellis Farm Trust, bought two parcels of land that he then further divided. Some of the resulting parcels fronted on the beach, while others did not. At issue here are lot 10 (a lot with direct beach access that is now owned by Mazzola) and lot D (a lot without direct beach access that is now owned by the O'Briens). In 1963, lot 10 was sold to Mazzola's predecessor-in-interest. The deeds in Mazzola's chain of title stated that the premises were conveyed subject to a fifteen-foot wide easement "for the benefit of all persons at any time owning or leasing any part of the remaining land of the grantor, or being lawfully invited to any part of said land, to pass and repass to and from the beach area, and for all other purposes for which right of ways are customarily used." In 1965, lot D was sold to one of the O'Briens' predecessors-in-interest, and the deeds in the O'Briens' chain of title conveyed the right to use the easement on lot 10. [Note 3] 

 The easement, as described in the various deeds, is fifteen feet wide and 450 feet long. It runs from Wingaersheek Road to the beach. From Wingaersheek Road to the edge of the sand dunes on the beach, the easement is a gravel path that also serves as Mazzola's driveway. Where the gravel path meets the sand dunes, the easement changes to a sandy area bordered on either side by beach grass. Although the easement is described in the various deeds as fifteen feet wide, the sandy area is only a few feet wide, and people passing over the easement -- whether by foot or ATV -- usually attempt to stay within the confines of the sandy area, thereby avoiding the beach grass. 

 As acknowledged by the trial judge, the evidence regarding vehicular use of the easement prior to 1994 was "scant." However, there was testimony from a former neighbor, who lived in the area from 1967 to 1999 and who had the right to use the easement, that he used to drive an ATV on the easement to get to the beach. The neighbor testified that he would make one round trip on the days that he went to the beach, that his ATV was "quieter than the average motorcycle," and that no one ever complained to him about the fact that he drove an ATV on the easement. The O'Briens purchased lot D in 1978, [Note 4] and their son

 Page 426 

 testified that, as a boy, [Note 5] he saw several different types of motor vehicles -- including ATVs -- on the easement. The trial judge credited the neighbor's and the son's testimony on these points. 

 Meanwhile, Mazzola purchased lot 10 in 1994. The beach house on lot 10 was the year-round residence of Mazzola and his family for three years, at which point it became a vacation property where they lived for significant periods of time in the summer and visited in the spring and fall. In 2005, Mazzola and his wife, their children then grown, moved back to the beach house. They continued to live there year-round until 2008, when they moved and once again began using the beach house as a vacation property.

 Mazzola testified that between 2005 and 2008, he mostly saw people traverse the easement by foot, although he sometimes saw ATVs on the easement. During that time period, the ATV use was mostly limited to the O'Briens' son, who drove an ATV on the easement approximately once every two weeks. From 2008 to 2014, use of the easement began to increase in general -- including both pedestrian and ATV traffic -- which was perhaps attributable to an increase in neighbors renting out their houses. Regardless, the O'Briens' ATV use did not increase during the 2008 to 2014 time period. 

 In 2013 or 2014, Mazzola asked several neighbors, including the O'Briens, to stop driving ATVs on the easement. While some neighbors acquiesced to this request, the O'Briens did not. The O'Briens' ATV use instead increased. As a result of significant physical limitations, Bonita O'Brien had difficulty traversing the easement by foot, and the O'Briens' ATV enabled her to access the beach. In 2015 and 2016, the O'Briens' son drove an ATV on the easement at least two or three times per week. 

 In or around May 2016, Mazzola responded to the O'Briens' increased use of the easement by installing two concrete bollards at the sand dunes where the gravel path meets the sandy area. The bollards were spaced so that ATVs could not pass. John O'Brien immediately dug up the bollards and left them on the ground on the side of the easement. The removal of the bollards spurred Mazzola to file this lawsuit in October 2016. 

 During the summer of 2017, the O'Briens' ATV use again increased. On Labor Day, while Mazzola was not at his beach 

 Page 427 

house, the O'Briens' son transported Bonita O'Brien and various supplies to and from the beach for a picnic. He made approximately ten round trips in the ATV on the easement, a level of use that had no precedent and was not repeated. Meanwhile, on a security camera, Mazzola was recording those trips across the easement. Mazzola later obtained an injunction prohibiting the O'Briens from driving ATVs on the easement, and the O'Briens complied with the injunction. 

 Discussion. Mazzola argued below that the O'Briens were overburdening the easement and creating a nuisance because (1) the O'Briens were not permitted to drive ATVs on the easement, and (2) alternatively, the O'Briens' ATV use had increased to such an extent that it was interfering with Mazzola's quiet enjoyment of title, damaging the sand dunes, and causing dangerous conditions on the easement. On appeal, however, Mazzola argues only that the O'Briens are not permitted to drive ATVs on the easement, either because (1) the scope of the easement is limited to pedestrian traffic, or (2) G. L. c. 90B, § 26 (e), and the regulations implementing that statute prohibit the O'Briens from driving ATVs on the easement. We address each argument in turn.

 1. Scope of the easement. "The general principle governing the interpretation of deeds is that the intent of the parties is ascertained from the words used in the written instrument interpreted in the light of all the attendant facts" (quotation and citation omitted). Assad v. Sea Lavender, LLC, 95 Mass. App. Ct. 689, 693 (2019). The same principles apply when interpreting easements created by conveyance. See, e.g., id.; Sheftel v. Lebel, 44 Mass. App. Ct. 175, 179 (1998). We accept the trial judge's findings regarding the attendant facts unless clearly erroneous. See Martin v. Simmons Props., LLC, 467 Mass. 1, 8 (2014). But the trial judge's ultimate interpretation of the easement is a question of law, see Assad, supra, that we review de novo, see Martin, supra.

 We agree with the trial judge that the scope of the easement is not limited to pedestrian traffic. The easement exists for the benefit of those who purchased Eriksson's land, for them to use "to pass and repass to and from the beach area, and for all other purposes for which right of ways are customarily used." This language does not expressly limit use of the easement to pedestrian traffic, nor do the attendant facts suggest an intent to so limit use of the easement. As noted by the trial judge, when the easement 

 Page 428 

was created in 1963, people commonly drove to the beach, and the easement is wide enough to accommodate vehicular traffic. Where nothing in the easement language or the objective circumstances supports an express limitation, the easement "may be used for such purposes as are reasonably necessary to the full enjoyment of the premises to which the right of way is appurtenant" (citation omitted). Cannata v. Berkshire Natural Resources Council, Inc., 73 Mass. App. Ct. 789, 795 (2009). See Kubic v. Audette, 98 Mass. App. Ct. 289, 303 (2020), quoting Cannata, supra (within judge's authority to rule "that using motor vehicles to ferry people or goods to the water was 'reasonably necessary to the full enjoyment' of the access rights" provided by easement). Especially where the easement is 450 feet long, a distance that is difficult or impossible for some to walk, using ATVs to transport people and equipment to the beach is a reasonably necessary use. [Note 6] See Kubic, supra.

 The trial judge did not err in concluding that the scope of the easement is not limited to pedestrian traffic. [Note 7]

 2. General Laws c. 90B, § 26 (e). We next address Mazzola's argument that G. L. c. 90B, § 26 (e), prohibits the O'Briens from driving ATVs on the easement. Mazzola's complaint alleged that the O'Briens' use of ATVs on the easement "is in violation of [S]tate and local laws and conservation principles," but made no mention of any specific statute or regulation. The judge's legal rulings refer to Mazzola's contentions that G. L. c. 90B, § 26 (e), and 323 Code Mass. Regs. § 3.03(3) (2011) independently prohibit people from operating ATVs over the right of way. However, the record appendix contains no copy of any pleading in which Mazzola raised a claim that was based on or that construed that statute or regulation, nor does it contain any transcript of the four-day trial. [Note 8] As a result, the precise contours of

 Page 429 

 the factual and legal claims before the trial judge are not apparent, and so our discussion of the legal issues is necessarily constrained, as explained below. 

 Whether G. L. c. 90B, § 26 (e), prohibits people from operating ATVs over the right of way is a question of statutory interpretation that we review de novo. See Dolan v. Dolan, 99 Mass. App. Ct. 284, 288 (2021). Under well-established principles of statutory construction, we interpret the statute "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (citation omitted). Chin v. Merriot, 470 Mass. 527, 532 (2015). We begin with the statutory language, looking not just at the provision at issue but at the statute as a whole, and we also consider the legislative history where it is informative. See Wallace W. v. Commonwealth, 482 Mass. 789, 793 (2019); Chin, supra.

 The plain language of G. L. c. 90B, § 26 (e), prohibits the operation of snow and recreation vehicles [Note 9] on "privately-owned property" unless "the operator is the owner or lessee or an immediate family member of the owner or lessee of the property," "the owner or lessee of the property has designated the area for use by such vehicles by posting reasonable notice of such designation," or

"the operator has in his possession either a document, signed by the owner or lessee of such property or his agent, authorizing the operation of . . . such vehicle on the property by the operator or valid proof of current membership in a club, association or other organization to which express authorization for the operation of such vehicles on the property has been granted; provided, however, that such operation shall be consistent with the express authorization granted and any restriction imposed therewith."

This language permits those who have clear legal authority (i.e., owners, lessees, and those who are on designated paths or who 

 Page 430 

have written authorization) to operate snow and recreation vehicles on the property, and it prohibits others who do not have that clear legal authority to be on the property from doing so. Thus, the language of § 26 (e) is directed toward persons who use recreation vehicles to trespass on the property of another. Of course, prior to the enactment of that statute, trespassing on the property of another -- with or without a recreation vehicle -- was already prohibited. See G. L. c. 266, § 120. It appears that the point of § 26 (e) is to address the particular problems posed by trespassing recreation vehicles, and to provide a mechanism for recreation vehicle operators to demonstrate that they have permission to do so on the property.

 To be sure, just because someone may have permission as a matter of property law to use a recreation vehicle on particular property does not limit the ability of the government to regulate or even ban such use. For example, G. L. c. 90B, § 24, prohibits operation of a recreation vehicle "which emits noxious fumes or makes unusual or excessive noise," and § 25 prohibits operation of a recreation vehicle upon a public way. See G. L. c. 90B, § 21 (requiring operators under age eighteen to successfully complete recreation vehicle safety course); § 22 (requiring registration of recreation vehicles); § 24 (requiring recreation vehicles to have safety equipment including headlights, rear red lights and reflectors, and muffler); § 26A (prohibiting operation of recreation vehicle while under influence of alcohol or other intoxicants); § 26B (prohibiting negligent or reckless operation of recreation vehicles). [Note 10] But those statutes do not prohibit someone from operating a recreation vehicle on privately owned property who has permission to do so.

 We turn to whether G. L. c. 90B, § 26 (e), prohibits the holder of an express easement -- the scope of which includes ATV traffic -- from driving ATVs on the easement. We conclude that it does not. Express easement holders are not trespassers. While the statutory language does not include an explicit exception for express easement holders, it does include exceptions for owners, lessees, and those who are on designated paths or who have written authorization. The O'Briens' deed containing the easement constitutes a "document, signed by the owner or lessee of such property or his agent, authorizing the operation of . . . such

 Page 431 

 vehicle on the property by the operator." G. L. c. 90B, § 26 (e). [Note 11] 

 Nothing in the regulations implementing G. L. c. 90B, § 26 (e), alters our conclusion that the O'Briens may drive ATVs on the easement. [Note 12] Mazzola points to a regulation that prohibits anyone from operating "a snow vehicle or recreation vehicle within 150 feet of an occupied residence without the permission of the owner, his or her agent or lessee of such residence, except in cases of emergency, when directly departing or returning to such residence or when operating on the property of another for which permission has been granted." 323 Code Mass. Regs. § 3.03(3). We do not construe this regulation, however, as applying to property owners or easement holders who are operating snow or recreation vehicles on their own properties or easements. Otherwise, the regulation would illogically permit someone to operate a snow or recreation vehicle within 150 feet of an occupied residence when operating on the property of another for which permission has been granted, but prohibit someone from doing the same on his or her own property or easement. See Commonwealth v. Aldana, 477 Mass. 790, 801 n.22 (2017) (traditional rules of statutory construction apply to interpretation of regulation). See also Sullivan v. Brookline, 435 Mass. 353, 360 (2001) (fundamental tenet of statutory interpretation is to avoid illogical results).

 We thus conclude that G. L. c. 90B, § 26 (e), and 323 Code Mass. Regs. § 3.03(3) do not prohibit the O'Briens from driving ATVs on the easement. [Note 13]

Judgment affirmed.

FOOTNOTES
[Note 1] Of the Seventeen Wingaersheek Realty Trust. 

[Note 2] Bonita J. O'Brien. 

[Note 3] When the O'Briens purchased lot D in 1978, their deed conveyed the right to use the beach "for bathing, beaching and mooring of boats and for all other purposes for which a beach is used with the right to use with others legally entitled thereto" the easement on lot 10. 

[Note 4] They have lived there continuously since. 

[Note 5] The O'Briens' son was three or four years old when the family purchased lot D in 1978. 

[Note 6] We note, as did the trial judge, that our conclusion does not permit the O'Briens to drive ATVs on the easement for purposes other than the limited purpose of accessing the beach, in a manner that does not create a nuisance. 

[Note 7] Because the right of way permitted the O'Briens to use the easement for purposes including accessing the beach with ATVs, we do not reach the question whether language in the deed entitling them to use the beach for "mooring of boats," see note 3, supra, contemplated their use of motor vehicles over the easement to transport boats to the water. 

[Note 8] As appellant, it was Mazzola's responsibility to provide those documents to this court. Mass. R. A. P. 18 (a), as appearing in 481 Mass. 1637 (2019). See Shawmut Community Bank, N.A. v. Zagami, 411 Mass. 807, 811 (1992). See also Roby v. Superintendent, Mass. Correctional Inst., Concord, 94 Mass. App. Ct. 410, 412 (2018). 

[Note 9] The O'Briens do not dispute that the ATV they drove on the easement is a recreation vehicle, as that term is defined in G. L. c. 90B, § 20. 

[Note 10] Absent a trial transcript, we do not know if Mazzola argued at trial that the O'Briens violated any of those statutes. Thus we do not pass upon that issue. 

[Note 11] Absent a trial transcript, we do not know if Mazzola argued at trial that the requirement that the operator have "in his possession" the document authorizing operation of the ATV on the property, G. L. c. 90B, § 26 (e), meant that the O'Briens' son was required to have a copy of the deed with him while operating the ATV on the easement. Thus we do not pass upon that issue. 

[Note 12] The interpretation of a regulation is also a question of law that we review de novo, applying the traditional rules of statutory construction. See Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 410 (2014). 

[Note 13] The O'Briens' request for attorney's fees, made on the basis that Mazzola's appeal is frivolous, is denied. Mazzola's appeal presents a novel question of statutory interpretation and is not frivolous. Nor do any of Mazzola's other arguments rise to the level of frivolousness required for an award of attorney's fees. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.