NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-325

VINEYARD CONSERVATION SOCIETY, INC.

vs.

JAIME LOBO BAPTISTE & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

As described in Kitras v. Aquinnah, 474 Mass. 132, 137-138, cert. denied, 580 U.S. 1000 (2016), in 1879, court-appointed commissioners completed a partition of over 500 lots in the town of Aquinnah "for the residents to hold in severalty."[2] The plaintiff, Vineyard Conservation Society, Inc. (VCS), commenced this action in 2016 pursuant to G. L. c. 240, § 6, to establish title to lot 240, a 5.4-acre lot on the resulting partition

---

[1] Byram Devine, Donna Devine, Herbert L. Devine, Jr., Joshua E. Devine, Marie T. Devine, Marie W. Devine, Marlene Devine, Julia R. Devine, Rebecca Devine, Tanya Devine, Stephanie Duckworth, Sara Fiorenzo, provisional administratrix for the succession of Zeb Devine, Shawne Gomes, Tanisha Gomes, Ralph Harding, II, Elisa Kapell, Joseph Kapell, Robert Kapell, Brandhi M. Lobo, Tyrone L. Lobo, Wayne Lobo, Kurtis Troy Small, Hillary L. Swindell, and the unknown heirs of Louisa E. Pocknett, also known as Louisa E. Devine.

[2] The town of Aquinnah was known as "Gay Head" until 1997. See Kitras, 474 Mass. at 133.

plan.  A judge of the Superior Court, after a trial, concluded that VCS is the fee owner of lot 240, and the defendants appealed.  We affirm.

Background.  We draw the facts from the trial judge's findings and the trial exhibits, supplemented at times by undisputed testimony.  See McLaughlin v. Zoning Bd. of Appeals of Duxbury, 102 Mass. App. Ct. 802, 804 (2023); Fish v. Accidental Auto Body, Inc., 95 Mass. App. Ct. 355, 356 (2019).  "Upon appeal, we accept a trial judge's findings of fact unless they are 'clearly erroneous,' . . . and do not review questions of fact if any reasonable view of the evidence and the rational inferences to be drawn therefrom support the judge's findings."  Martin v. Simmons Props., LLC, 467 Mass. 1, 8 (2014).  "[T]he trial judge's ultimate interpretation of the [deed] is a question of law . . . that we review de novo."  Mazzola v. O'Brien, 100 Mass. App. Ct. 424, 427 (2021).

It is undisputed, and the judge so found, that as a result of the 1879 partition, lot 240 was assigned to "Louisa E. Divine -- Census No. 3."[3]  Although Louisa died in 1874, before the partition plan was completed, because the land was divided and assigned based on residency in the 1870 census, her estate would

_____

[3] The partition document spells Louisa's surname "Divine," but the judge and the parties refer to her as "Devine."  None of the parties contend that any issue turns on the spelling.

2

have received lot 240.  Louisa died without a will, leaving her husband and several children.  Her husband, Patrick, died in 1890, survived by some of their children.

The judge found that there was a deed to lot 240 from "Louisa E. Divine" to Ephraim Mayhew dated July 21, 1887.  Where Louisa, however, had died in 1874 and could not have signed the deed in 1887, the judge found that her daughter, Eliza (also known as Louisa), had executed the deed -- at a time when Eliza did not solely own lot 240.  The judge concluded that there was no evidence to support reforming the 1887 deed to reflect that Eliza, and her father and siblings, intended the 1887 deed to convey all of their interests in lot 240 to Mayhew.  The judge found, therefore, that the 1887 deed was ineffective, that the Mayhew chain of title was invalid, and that lot 240 passed to Louisa's heirs.  On appeal the defendants agree with the judge's analysis on this point.  VCS claims that it holds title under both the Mayhew chain of title and what has been described as the Devine/Cronig chain of title, discussed below.

Concluding that lot 240 was retained by Louisa's heirs, the judge traced the title from all of Louisa's heirs to VCS (the Devine/Cronig chain of title).[4]  Perhaps because of the 1887 deed

---

[4] There does not appear to be any dispute about the identities of Louisa's and Patrick's heirs.  Testimony of a title expert at trial revealed that two of their children died unmarried and without children in 1888 and 1916.  The only surviving heirs

3

and its progeny, there is no deed that specifically identified lot 240, but each of the pertinent heirs and their grantees used broad language and transferred to VCS's predecessors "all and every other piece, parcel, lot, and interest in land in said Gay Head which I have any interest in," or words to that effect.[5] A total of six deeds leading to the deed to VCS used similar language, which the judge concluded was unambiguous "and that . . . each [deed] had the effect of passing on the grantor's interest in [l]ot 240 to the grantee."

Discussion. The defendants' primary argument on appeal is that the general language in the deeds in the Devine/Cronig chain of title was insufficient to transfer lot 240 because interpretation of a deed turns on the grantor's intent viewed in light of the attendant circumstances, and "the attendant circumstances" were such that the heirs were or should have been

_____

were Jeannette, Eliza, Grafton, and Mercy. Jeannette died in 1929 and left everything she owned to Eliza. Mercy married, but she, her husband, and her sons predeceased her son Joseph, and when Joseph died (unmarried and without issue) in 1923, his interest in the Gay Head property went to his aunts and uncle, Eliza, Jeannette, and Grafton. In 1937, Eliza conveyed all her property (and Jeannette's) on Gay Head to her nephew, Horace Devine. Grafton died in 1932 and his surviving wife and children also transferred all interest they had in any property in Gay Head to Horace Devine. Thus, all of Louisa's heirs' interests in lot 240 were transferred to Horace Devine. In 1945, Horace conveyed all of his right, title, and interest in any property in Gay Head to Henry Cronig, thereby commencing the Devine/Cronig chain of title.
[5] There is no argument that the modest differences in the language used in each deed are relevant.

4

aware of the 1887 deed to lot 240, and thus could not have had the specific intent to transfer lot 240.  In other words, the defendants argue that the heirs' presumed knowledge of the 1887 deed meant that the heirs could not have later intended to transfer any interest in lot 240 because they would have believed that the 1887 deed had already conveyed lot 240 to Mayhew.  The defendants fail to consider that if the heirs were aware of the 1887 deed, they may have been equally aware of Eliza's lack of authority to execute it on behalf of her mother's estate or her mother's heirs, resulting in the 1887 deed being void.  See Bongaards v. Millen, 55 Mass. App. Ct. 51, 55 (2002) (deed from individual who did not own property "could convey nothing, and thus was a nullity").  Nor do they support their contention that a void deed nonetheless provides constructive notice of a competing title claim.  In any event, the heirs' presumed knowledge of the 1887 deed does not assist the defendants where the clear intent of the plain language of the deeds in the Devine/Cronig chain of title was to divest the grantors of their interest in all property in Gay Head.

It is true that "[t]he general principle governing the interpretation of deeds" is "that the intent of the parties in each instance was ascertained from the words used in the written instrument interpreted in the light of all the attendant facts." Hickey v. Pathways Ass'n, 472 Mass. 735, 744 (2015), quoting

5

Suburban Land Co. v. Billerica, 314 Mass. 184, 189 (1943). To be sure, the language in the deeds is not exacting, and the grantors took risks using it. Cf. Fitzgerald v. Libby, 142 Mass. 235, 238-239 (1886) (mortgagee took risk where general description of land used). However, the language of a deed is construed most strongly against the grantors, see Kettle Brook Lofts, LLC v. Specht, 100 Mass. App. Ct. 359, 373 (2021), and if in using such broad language the heirs transferred property they did not know they owned, that was the result of the plain language they chose to use.

We need not consider whether admission of extrinsic evidence was proper here, because even considering it, the judge concluded that title to lot 240 is in VCS. The deeds express the specific intent to transfer the grantors' interests in all land on Gay Head -- there is no exception for property that they did not know they owned. The language, "all and every . . . parcel . . . in Gay Head which I have any interest in," includes parcels that the grantors did not know they owned. Thus, even accepting that the heirs all believed that Eliza had validly sold off lot 240 and they had no remaining interest in it, the broad language they used encompasses the possibility that a deed had been ineffective or invalid or a transfer had been otherwise ineffective. We discern no impediment to enforcing their intent

6

to divest themselves of all of their interests in all land in Gay Head in which they had an interest.

Even assuming, without deciding, that it is appropriate to consider the extrinsic evidence offered by the defendants notwithstanding the plain language of the deeds, we agree with the judge that that evidence would not change the result. The defendants incorrectly assert that the judge did not consider other "attendant circumstances," including that certain tax takings showed that the town did not treat lot 240 as owned by the heirs and their grantees. The judge specifically rejected the argument that the transfer of lot 276 on the partition plan in 1947 was proof that the grantor did not intend in 1945 to make a conveyance of all his lands, including lot 240, by the general language transferring all of the grantor's interest in all Gay Head property. The judge found that the deed to lot 276 in 1947 simply confirmed the earlier transfer of that lot, and

7

we discern no error in that conclusion.

For all of the foregoing reasons, we affirm the judgment.

<u>Judgment affirmed</u>.

By the Court (Desmond, Shin & Singh, JJ.[6]),

*Anne M. Thomas*
Assistant Clerk

Entered: March 14, 2024.

---

[6] The panelists are listed in order of seniority.