EDWARD DARMAN vs. LOUISE DUNDERDALE,
administratrix, & others.

Norfolk.   October 6, 1972. — November 20, 1972.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

Real Property, Easement; Deed: construction. Way, Private: creation.

In a land registration proceeding, where it appeared that a deed to one of two contiguous parcels theretofore under one ownership specifically referred to a plan showing the land conveyed but did not refer to an earlier plan of the other parcel, it was held that a notation in the legend on the later plan merely referring to the earlier plan did not indicate that the grantor intended that the grantees of the land conveyed should have easements over the roads shown on the earlier plan. [637–638]

Evidence in a land registration proceeding that in 1932 when a parcel of land shown on a plan was conveyed there was access thereto from a public way vitiated a contention that the deed impliedly gave the grantees rights of way over roads shown on an earlier plan of contiguous land of the grantor; a 1957 eminent domain taking which extinguished such access and left the parcel conveyed landlocked was irrelevant on the question of the grantor's intent. [638–639]

In the margin of a plan of land with adequate access to public high-
ways which was conveyed by a deed which mentioned the plan but
did not refer to a later plan of contiguous land of the grantor, a
mere reference to the later plan did not incorporate it into the deed,
and did not give the grantees of the contiguous land easements
over roads shown on the earlier plan. [640]

In a land registration proceeding, where it appeared that the corporate
common predecessor in title of the petitioner and the respondents
had subdivided its land into two contiguous parcels with a road
bounding the respondents' parcel and proceeding through the peti-
tioner's parcel to a public way, and that the respondents' alleged
access to the public way was extinguished by a taking of the road
by eminent domain for which they received damages, it was held
that the respondents were not entitled to a right of way to the
public way over other roads through the petitioner's parcel. [640–
642]

PETITION filed in the Land Court on December 21,
1967.

The case was heard by *McPartlin*, J.

*Carl J. Young* for the respondents.

*Sidney Werlin* (*Richard M. Zinner* with him) for the
petitioner.

TAURO, C.J.    This case arises from a Land Court
decree entitling the petitioner Darman to register land
situated in Weymouth, Massachusetts, under the provi-
sions of G. L. c. 185, free from any alleged right of way
claimed by the respondents.   The respondents filed both
an appeal from the decree and a substitute outline bill
of exceptions.   Since the respondents have briefed only
questions raised by the outline bill, we have considered
the exceptions and dismiss the appeal.

The respondents own land abutting the petitioner's
property.   At the Land Court hearing the respondents
claimed an easement by prescription over the petitioner's
property but the point is not argued in their brief to this
court and consequently it must be considered waived.
*Fialkow* v. *DeVoe Motors, Inc.* 359 Mass. 569, 572–573.
In any event, there is ample evidence to support the trial
judge's ruling that the respondents had not sustained
their burden of proving that they had acquired a pre-
scriptive easement.

The respondents argue that from the language of the

deed to their predecessors in title it is clear that the grantor intended to convey easements over certain planned streets passing through the petitioner's land, thus affording the respondents access to a public way.

It appears that a portion of the petitioner's property and the whole of the respondents' property were part of a tract of land conveyed to the J. W. Wilbur Company, Inc. in 1918. The Wilbur Company subdivided the tract into 339 lots, and laid out several streets shown on two separate plans entitled "Nash Corner Gardens" (Plan No. 1) and "Plan No. 2 Nash Corner Gardens" (Plan No. 2).[1] Plan No. 1 dated September 30, 1918, includes the portion of the petitioner's property over which the respondents now claim easements. Plan No. 2 dated November 14, 1918, comprises the respondents' land. Both plans were recorded with the Norfolk registry of deeds, although it is not clear from the record whether they were recorded on the same day.[2]

In 1926 the Wilbur Company conveyed the part of the land shown on Plan No. 1 now owned by the petitioner, and other property, to one Pascal Flint. The deed made reference to Nash Corner Gardens Plan No. 1 and to the lot numbers. The language of the deed to Flint conveyed the property "as shown on plan of lots at Nash Corner Gardens belonging to J. W. Wilbur Co. Inc. . . . dated September 30, 1918 . . . . For more particular description of said lots reference is hereby made to said recorded plan. Together with the fee in so far as the said grantor has the right so to convey the same, of all the streets and ways shown on said plan, in common with the owners of the other lots shown on said plan, and subject

---

[1] Both plans are reproduced in the respondents' brief. Plan No. 1 appears at Appendix B and Plan No. 2 appears at Appendix C. At Appendix G the two plans have been joined and are reproduced together.

[2] At Appendix D of the respondents' brief the deed from the Wilbur Company to one Pascal Flint states that Plan No. 1 was recorded in "Book of Plans 89 Plan 4310." At Appendix E of the respondents' brief the deed from the Wilbur Company to "Antonio and Rosa DiMarco [sic]" states that Plan No. 2 was recorded in "Book of Plans 89, No. 4311."

to the right of all the said lot owners to make any customary use of said streets and ways. TO HAVE AND TO HOLD the granted premises, with all the privileges and appurtenances thereto . . . ."

Subsequently, the town of Weymouth took Flint's part of the land designated on Plan No. 1 for unpaid taxes and in 1967 the petitioner acquired the property except for a road known as Rockway Avenue and portions taken by eminent domain for construction of Route 3.

It should be noted that nowhere in the deed to Flint is Plan No. 2 mentioned and the only reference to Plan No. 2 to be found on Plan No. 1 is noted at the southeasterly edge of the street map: "J. W. Wilbur Co. Inc. Plan 2."

The respondents also derive title from the Wilbur Company. By a deed dated 1932 the Wilbur Company conveyed to Antonio and Rosa DeMarco property referred to in the deed as "Nash Corner Gardens No. 2." The deed from the Wilbur Company to the DeMarcos, the respondents' predecessors in title, granted "20 acres of land in South Weymouth . . . as shown on plan of lots at Nash Corner Gardens No. 2 . . . dated November 14, 1918, and recorded . . . . Together with fee in so far as the said Corporation has the right so to convey the same, of all the streets and ways shown on said plan, in common with the owners of the other lots shown on said plan, and subject to the right of all the said lot owners to make any customary use of said streets and ways. . . . TO HAVE AND TO HOLD the granted premises, with all the privileges and appurtenances thereto . . . ."

Nowhere in the deed to the DeMarcos is Plan No. 1 mentioned. Plan No. 2 of the Nash Corner Gardens has several roads clearly indicated upon it. In the legend of Plan No. 2 appears the notation:

$$
\begin{aligned}
&\text{Plan No. 1} = 27 \text{ acres} \\
&\text{``} \quad \text{``} \quad 2 = 20 \quad \text{``} \\
&\hline
&\quad\quad 47 \quad \text{``}
\end{aligned}
$$

To the northwest of the boundary of Plan No. 2 appears the notation "Plan # 1." No portion of Plan No. 1 appears on Plan No. 2 and no portion of Plan No. 2 appears on Plan No. 1. The two areas of land represented by Plan No. 1 and Plan No. 2 are contiguous and the lot numbers on the two plans run consecutively. The plans, however, bear different dates.

From these documentary facts the respondents argue that the common grantor intended to give them rights of way over all the roads as laid out on both plans. It is not disputed that the respondents have the right to pass over the streets as laid out on Plan No. 2.

The court below found that the "conveyances of the two areas by J. Wilbur Company, Inc. did not give, either to the grantees or their successors, any rights to use the ways on the other grantee's land." The respondents argue that this finding constitutes reversible error.

The petitioner urges that findings of fact as to the intention of the grantor are not to be reversed unless plainly wrong. But *Harvey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138, 143, and *Hurd* v. *General Elec. Co.* 215 Mass. 358, 360, make it quite clear that the "plainly wrong" standard of appellate review is not applicable to cases where the evidence is wholly documentary. When an appellate court seeks to elicit the grantor's intention from the language of a deed exclusively, "the appellate court stands in the same place as the judge who heard the case." 215 Mass. at 360. The record does not indicate whether the Land Court's finding of the grantor's intent was based solely on the documentary evidence presented or whether it was based in part on oral testimony concerning the circumstances surrounding the execution of the deeds. If the Land Court judge reached his view of the grantor's intention solely from the documentary evidence, this court has the same interpretive powers as the Land Court judge.

The respondents, in effect, ask us to interpret Plan No. 1 as an integral part of their deed because their deed

mentions Plan No. 2, and Plan No. 2 has a reference in the legend to Plan No. 1. *Prentiss* v. *Gloucester*, 236 Mass. 36, would appear to reject such an interpretation. The court there refused to read references in deeds to sectional plans which were part of a larger index plan as references to the whole of the index plan. Citing *Regan* v. *Boston Gas Light Co.* 137 Mass. 37, and *Pearson* v. *Allen*, 151 Mass. 79, the court made it clear that "a reference to a plan in a deed . . . does not result in the conveyance of rights not necessary for the enjoyment of the premises, in the absence of an intent appearing to that effect . . . ." 236 Mass. at 52. In the absence of a clear indication that the original grantor intended to convey to the respondents' predecessors in title rights in all the ways on Plan No. 1, we cannot now rule that the respondents possess such easements.

The respondents' deed specifically refers to Plan No. 2. There is no reference in the deed to Plan No. 1. From the documentary evidence presented we think that a mere notation referring to Plan No. 1 in the legend of Plan No. 2 is not a clear enough indication that the grantor intended to give the grantees of land shown on Plan No. 2 easements over all the roads shown on Plan No. 1.

In interpreting the grantor's intent from a deed the trial court is permitted to take into account "material circumstances and pertinent facts known to . . . [the parties] at the time . . . [of execution]." *Bessey* v. *Ollman*, 242 Mass. 89, 91. The respondents argue that to construe their deed not to incorporate a grant of rights of way over the roads shown on Plan No. 1 would be to imply that the grantor intended the respondents' property to be landlocked, without access to a public highway. We cannot agree. In 1957 the Commonwealth took a portion of the respondents' land and a part of a street laid out on Plan No. 1 known as Pleasant Valley Road. The Land Court judge heard testimony that prior to the 1957 taking by the Commonwealth there was access to the respondents' land from a public way via gravel tracks conforming with the layout of Pleasant Valley Road as

shown on Plan No. 1. Such testimony may well have led
to the judge's decision that the two plans were not
merged. If the deed was interpreted in light of such
testimony we cannot say that the judge was plainly
wrong. Of course, any lack of access to the respondents'
property after the 1957 taking does not serve retroac-
tively as proof of the grantor's intention to afford access
to the property at the time of the execution of the deed
to the DeMarcos in 1932.[3]

Since there was ample evidence that there was a means
of access to the respondents' property in 1932, the re-
spondents cannot claim that construing Plan No. 1 as an
integral part of the DeMarcos' deed is necessary to pre-
vent a finding that the grantor intended the property to
be landlocked.

It is not at all certain whether the Wilbur Company
could have conveyed easements over land in Plan No. 1
to the DeMarcos even if it had so intended. There was
no evidence that in 1932, when the Wilbur Company
conveyed the property outlined on Plan No. 2, the com-
pany still owned any rights in the streets outlined on
Plan No. 1. If the company did not own such rights of
way it of course could not convey them to the DeMarcos.
*Brainard* v. *Boston & N. Y. Cent. R.R.* 12 Gray 407, 410.

In 1926 the Wilbur Company had conveyed a consider-
able portion of the land shown on Plan No. 1 to Pascal
Flint. That deed granted rights of way in common with
other lot owners over all the streets outlined on Plan
No. 1. There is no evidence whether the Wilbur Com-
pany retained the remainder of the property shown on
Plan No. 1. If, after its grant to Flint, the company
had retained part of the land comprising Plan No. 1,
the only easement rights in the land shown on Plan
No. 1 that it would have retained and could have con-
veyed to the DeMarcos in 1932 would have been rights

---

[3] We note that there is evidence of an easterly access to the respond-
ents' property via Pleasant Street and over part of the Old Swamp
River but this is not decisive of the issue before us.

appurtenant to the lots it still owned. *Dubinsky* v. *Cama*, 261 Mass. 47, 54–55.

Unless it can be maintained that Plan No. 2 was an integral part of the deed to Flint, even if the Wilbur Company owned appurtenant easement rights over land shown on Plan No. 1 in common with Flint in 1932, it would have had no power to grant such common easement rights to the grantees of the land shown on Plan No. 2. *Phillips* v. *Rhodes*, 7 Met. 322, 324.

It does not appear that when the Wilbur Company conveyed land and easements to Flint by deed with reference to Plan No. 1 the company intended to include any right of way over the streets outlined on Plan No. 2. Certainly there was no necessity for such easements as Flint had adequate access to public highways. The deed to Flint mentions Plan No. 1 but makes no reference to Plan No. 2. Perusal of Plan No. 1 finds only one marginal reference to "Plan 2" at the southeasterly edge of the streets and lots designated on Plan No. 1. Such a marginal reference is insufficient to incorporate Plan No. 2 into the Flint deed. *Prentiss* v. *Gloucester*, 236 Mass. 36, 52.

We conclude, therefore, that in 1932 the Wilbur Company did not grant the DeMarcos easements in common with other lot owners over all the streets outlined on Plan No. 1.

The respondents point out that *Frawley* v. *Forrest*, 310 Mass. 446, 451, holds that a grant of land bounded by a street or a way includes a perpetual easement along the extent of the way as it is then laid out "to such outlet or termination as will make the way available for its intended purpose."

The respondents' property is bounded by a street appearing on Plan No. 2 named Pleasant Valley Road. This planned road originally proceeded through the petitioner's property on Plan No. 1 to Middle Street, a public way. The respondents contend that the intended purpose of the DeMarcos' easement over Pleasant Valley Road was to afford access to Middle Street.

In 1957 part of the respondents' land and the part of Pleasant Valley Road which provided access from the respondents' land to Middle Street were taken by the Commonwealth of Massachusetts in order to construct the Southeast Expressway. The taking prevented the respondents from reaching Middle Street via Pleasant Valley Road. In his decision the Land Court judge said that the "respondents received a payment for the damages to their property as a result of the taking." The court below assumed that the amount of the damages "included the loss sustained by the taking of their means of access to Middle Street." On the record before us this appears to be a logical and rational assumption.

The 1957 eminent domain proceedings by the Commonwealth extinguished any rights the respondents had in the part of Pleasant Valley Road taken. *Cornell-Andrews Smelting Co.* v. *Boston & Providence R.R.* 202 Mass. 585, 597. The fact that the respondents' access to their property had been severed by the eminent domain proceedings in 1957 cannot change retroactively the grantor's intention at the time of his conveyance. Implied easements arise from "the language of the instruments when read in the light of the circumstances attending their execution, the physical condition of the premises, and the knowledge which the parties had or with which they are chargeable." *Dale* v. *Bedal,* 305 Mass. 102, 103.

The respondents maintain that since their access to Middle Street via Pleasant Valley Road has been taken by eminent domain they should be afforded access to Middle Street via the remaining portion of Pleasant Valley Road, thence down Ray Street and up Rockway Avenue to Middle Street. We do not agree. In *Morse* v. *Benson,* 151 Mass. 440, the grantee of land abutting the grantor's property acquired an easement by necessity to pass through the grantor's land and proceed onto a highway. Subsequently, the highway was moved and the grantee argued that his easement should be extended to meet up with the new highway. The court rejected this conten-

tion stating: "Upon the discontinuance of the highway he [grantee] was entitled to damages, on the ground that he was thereby cut off from his only means of reaching his land, and that his lot and his easement had become of little value. His remedy was to be sought in a claim for damages, and not by attempting to extend his way of necessity . . . ." 151 Mass. at 441–442.

We conclude that the respondents have no easement or right of way over the petitioner's land. There was no error in the Land Court judge's rulings.

*Exceptions overruled.*
*Appeal dismissed.*